19-1008 Nathan M. v. Harrison School District. Mr. Robinson. Thank you, Your Honor. May it please the Court. The 2016 IEP at issue in this case is not reasonably calculated to provide Nathan a free appropriate public education under the substantive standard that was established by the United States Supreme Court in Endureff v. Douglas County School District and neither the district court in this case nor the administrative law judge properly found that it did. The legal standard as set out by the Supreme Court is whether the IEP, the individualized educational program for the child, that is offered by the school district is, quote, reasonably calculated to enable the child to make progress appropriate in light of the child's circumstances. Finally, after 35 years of confusion and conflict in the courts, the Supreme Court finally decided this case and established a single standard to determine what constitutes a free appropriate public education for a child with a disability. Before you get into the merits, I want to stop you and talk about mootness. We're talking about the 2016 plan, education plan, for this student and it's no longer in place, correct? Correct. So why should, why would this have any consequences in the real world if we were to decide this case? Because there's a fundamental dispute, an intractable dispute, amongst the parties that will never go away until this court decides that issue once and for all. This is a substantive challenge to the appropriateness of the free appropriate public, or of the IEP, which includes the belief, or the parent's position, along with their experts, is that this child needs a specialized placement like Alpine, which the school district many years ago decided this is what this child needs. He could not obtain an appropriate education anywhere else within the district other than at Alpine, and that Alpine provides a specific ABA, BCBA-based program. School district, they can provide Nathan a completely different placement, a completely different program. So we're at two... Why wouldn't those arguments be at play for the 2019 IEP? They would be. Okay, so why do we care about what they did in 2016? Because that issue has not gone away. It's the same as in Andrew F. I know, but they haven't, yeah, I know it hasn't gone away, but they haven't made a decision yet about whether, they may find your arguments now meritorious in light of the students progress, or lack of progress, under the expiring IEP. Well, under the, you know, the exception to the mootness doctrine, one is, is it's incapable of being decided within the time frame, and I think that in the Stephen RF case, it's clear that yes, and versus Doe, the U.S. Supreme Court says yes, clearly this year is too short of a time frame. I know, I get you on that, but it seems to me that the school district still could decide to send him back to Alpine based on current circumstances, right? Theoretically. I mean, if they've made a categorical or irreversible decision that he's never going to Alpine, then I think you're probably out of a good argument, but isn't it, do they still have the discretion to change their previous position and send him to Alpine? Sure, they always do. I mean, and that could be tomorrow, that could be next week, that could be in six months, in a year, and I think that that's what Hoenig versus Doe and all of these cases go to when you're talking about a substantive FAPE issue such that it's at the heart of this case, and that was at the heart of NDREF, and that's the heart of 90% of all cases is, is this, you know, did the school district provide a free appropriate public education? The difference is in Hoenig is that the expulsion policy there was what they or the next education plan or the plan after that, the district was taking the position that they could expel students for unruly behavior, and that's what the disagreement on. I think what Judge Tymkiewicz is saying is we've got a student here who, the reason you evaluate him every year is because his progress may change, and his needs may change, and the district is going to each year assess where he should be and what services he has, so looking at a 2016 plan doesn't really do us any good because it's not in effect anymore. A couple points on that. I mean it does because the issue is still, the issue is still alive. The case in controversy over what is an appropriate education for this child has not been resolved, and there's no evidence in the record anyway that anything has changed since 2016. There's no additional evidence that's been proffered by the school district that says, hey, wait a second court, this now is moot. The parents are on the same page with regard to the educational placement and program for this child, and I think an instructive case that's cited in our supplemental brief is this Daniel R.R. versus State Board of Education, and that is, in this, in that case is basically the flip side of the same coin as this case is. There, the parents, and the Daniel R.R. case is very representative of a number of these special education disputes in that the parents there say, my child's in kindergarten in the public school, he's doing great, he's getting a free appropriate public education, and the school district says, no, we want to change his placement to, say, a self-contained classroom, a separate classroom with children with disabilities, and the parents say, wait a second, we're not, he's not being harmed, he's getting an appropriate education now, keep him here, and so the dispute is theirs between this mainstreaming argument versus removal, and in the, and Daniel R.R. tackled that mootness issue straight on to say, we don't even care if the parents are no longer in the school district. This, this issue that is at the heart of this case is, is a substantive violation of the, of the IDEA that doesn't go away. Would you agree under our, this summer's mootness case, that all your procedural claims would, would in fact be moot? I think that the procedural claim, if they're only procedural claims, I think that, just like in Steve and R.F., I think that they could say, well, but even that, well, I could say that there's an argument regarding mootness, but the central issue in this case is not procedural, it's substantive. And the substantive claims here are what? Substantive claims here is whether the, the IEP, the 2016 IEP, as drafted by the school district, is reasonably calculated to provide Stephen, or I'm sorry, Nathan, an appropriate education. Okay, and why, why wouldn't that substantive claim be superseded by, or why wouldn't that expire with the expiration of the 2016 plan? Well, the 2016 plan, or the 2017 plan. Let me broaden my question, you know, what, what concerns should we have that the school district is going to commit the same sin for the, for the next plan? Because there's no evidence that it, that it hasn't, right? I mean, that, I mean, if, if, I'll put it this way, that if the court finds, in this case, that a substantive violation of the IDEA, such as this, that this IEP does not provide Nathan an appropriate education, both a placement and program, if the court finds that that issue is moot, then there is virtually no legal recourse, no judicial recourse for a child, because the court would always say, well, it's always going to be replaced by an IEP, whether it's, and an IEP can be replaced next week. No, I understand the catch-22 aspect of it, but what's the ongoing violation by Harrison? Ongoing violation of the, you know, IDEA? They have not offered to the parent an IEP, an individualized educational program, that's reasonably calculated to provide Nathan an appropriate education. If we, if we agree with that, what's the rent, what do we order them to do? Well, you order them to, well, to create a new IEP that's consistent with the law, right? Well, so, well, that raises an interesting point, in that this court, its standard of review is set by the IDEA, and this court's standard of review is identical to the district court standard of review, which is similar to, well, it's not similar to the ALJ, but it is identical to the district court, and that was decided in Garcia, but I think the Tenth Circuit has, has acknowledged that our standard of review here is similar to the district court, and the district court is required to, after... Before you go there, you know, answer my question on what we would order the school district to do if we ruled in your favor on this. So, we're asking you to, to rule in our favor in saying that, that according to the administrative record and the additional evidence that the district court admitted into this case, but never considered to say, as a right now, Nathan requires this placement in program, which it chose, and Nathan's been at for the last six years, that that is required at this time to provide Nathan an appropriate education in the least restrictive environment. So, we're asking... To send him to Alpine. Alpine, I'm sorry. Wouldn't the remedy be for us, your substantive claim is that they, the school district, failed to and then develop an appropriate IEP? Right. And wouldn't our, wouldn't our, wouldn't the remedy be to send this back and tell the school district to do that? Well... Because I don't think we can, I don't think we can tell them to send, send the child to Alpine, can we, absent showing under the 2019 IEP, that that's the best available method for a FAPE? Well, so the remedy... Help me on the mootness. I'm just trying, trying to overcome what we can do to help the child here. Well, I mean, the answer to that is, is that, I mean, you're sitting technically, pursuant to the standard review, you're sitting in the same shoes as the district court. And the district court, in this situation, what we're asking the district court to do is, is to take a look at the record, take a look at the additional evidence, and say, this is, we're here to decide, under the IDEA, under the standard provided by the court in NREF, what is an appropriate education for this child? Right. And, and so that is what we're, that was what the challenge was at the district court. And that's what the challenge is here today, is to say, the district court got it wrong. It didn't even look at the evidence. We can either remand that to the district court, and say, you know, apply the proper standard review, and apply the NREF standard, and come up with the right decision, or this court can make that decision itself. To say, all right, we need to apply. We're charged with looking at the administrative record, looking at the additional evidence, applying the standards set forth in NREF, and deciding, is this IEP, is it reasonably calculated, provide a FAPE? Well, and if we did, and if we did what you're telling us to do, and we said, yep, that 2016 plan's no good. Right. Again, what is the remedy? I mean, under the stay put rule, the child stayed where the parents wanted him, and that plan's no longer in effect. There's nothing... It is in effect. Well, I mean, they 29-teen plan is based upon what this court has decided to be a free appropriate public education for the child. There is no stay put anymore. After the court decides, that is what the court decides. This is not a FAPE. I think everybody agrees that Alpine provides an appropriate education. He's made outstanding progress there, so that's not in dispute. The dispute is whether the no ABA, no BCBA. But he's not in elementary school anymore. Well, middle school. And his 2019 plan provides for ABA, right? No. Well, if you have a 2019 plan, I'd like to see it, because the 2019, the 2017 plan, the 2018 plan, 2019 plan, is nowhere in the four corners of the administrative record or the additional evidence that is before me and before the court. The school district never sought to admit additional evidence to say, wait a second, we do have ABA, or we do have BCBA. Things have changed. Here's the new IEP court to consider. That has never been, that's never been done. And again, I know my time is running out, and we spent... When is the 2019? Is there a 2019 plan in effect? I don't know if there even is one. I know that there, I attended a couple. When should it, I mean, the other one expires at the end of the school year, or does it? Right, so if you take, you know, December. It happened procedurally in this. So if you take December 2016, which is the IEP at issue in this case, it is legally required to be reviewed every year, right? But you can review an IEP all the time. So it's a very dynamic process. So you can't say, I mean, it's like saying, well, we have an IEP today, and we have an IEP in two weeks. By its term, does it expire on a particular date? The 2016? It hasn't expired so much as it's been replaced by something else. But again, I would, I didn't leave enough time to rebuttal, but I do. I'll give you a little bit of rebuttal. Okay, but it's very, I think it would be a very dangerous precedent, let me say that, that if in a substantive violation case like this, that the court would determine that this case is moot, because then that basically eradicates not only for parents to challenge an IEP, but school districts too. And that's why the school district and Stephen RF, you know, aggressively said, our appeal is not moot. And that was on a single procedural issue that was checked off, that was issue was done. Here, it's not, it's nowhere close to that. We're dealing again with the, with a decision that's critical importance to a child. And if the court says, in this decision in this case, to say, well, every IEP is replaced or expires, so there's no jurisdiction for us to decide that issue, that takes care of 90% of IDEA disputes. Thank you, counsel. Thank you. Let's hear from the school district. Good morning, your honors. May it please the court, my name is John Stanek, and I'm with Anderson-Duden-LaBelle, and we represent Harrison School District 2. Seated beside me is Mr. Kelly Duden from Anderson-Duden-LaBelle, and immediately behind us is Ms. Amy Lloyd, the special education director for Harrison School District. If I may begin by answering a couple of questions that I heard left unanswered. Currently, the IEP that's in place for Nathan is an IEP that was written in 2018. The 2019 IEP has been initiated through a re-evaluation. The draft IEP has been sent to the parents. Mr. Robinson attended those IEP meetings in 2018, and the active IEP has been continued given the review process. Each year since 2016, the district has reviewed the IEP pursuant to IDEA and re-evaluated the student. Do you think this case is moot then? Your honor, if this case is not moot, it is due to the substantive issue of free appropriate public education in the least restrictive environment. And don't they have a couple of substantive claims here? Pardon me? Aren't there some substantive claims? Yes, your honor, the substantive claims would be the free appropriate public education in the least restrictive environment. Unlike Fernandez, this case involves a placement along two different placements, a disputed two different placements along the least restrictive environment continuum, and that is Alpine is an off-campus private facility limited to only applied behavioral analysis, and this Otero is a neighborhood elementary school with a center-based program. Well, is that argument good enough to take us that that would be an opportunity for this court to distinguish Fernandez from this case, your honor? Yes. And what do you mean by that? Well, your honor, that in Fernandez, the dispute was some technical procedural questions on two different settings that were not different on the least restrictive environment continuum, and in this case there is. And under both Nebo and Murray, the least restrictive environment is a substantive issue in IDEA. But how does it come into play here that it's going to necessarily be involved in all the future plans, education plans? Sure, your honor. As you see in the record, the struggle with Nathan is not simply behavioral. His behavioral issues are fairly contained and compliant. Only two behaviors came forward in the re-evaluation from 2016, and also two behaviors from the independent evaluation came forward. The real struggle for him is in accessing the curriculum and accessing reading, writing, and mathematics specifically, as well as socialization skills taught by appropriately licensed teachers who know how to teach. ABA has its limits. It is not effective. It is wanting in teaching students how to read, write, and conduct mathematics, and that is his struggle. And that is what the IEP contains from 2016, as well as his most recent IEP recommends reading, writing, and mathematics instruction by a licensed professional teacher who knows how to teach those subject matters. He is eager. He's an eager learner. He seeks to learn, and that's exactly what the IEP is conducted to provide him. And as the review goes forward, there is no predetermination. We can't predict what the next IEP will do. However, we do know that Alpine is showing wanting instruction in mathematics and reading and writing, and does not have licensed teachers who are familiar with teaching reading, writing, and mathematics, and other subject matters for that matter, for science and social studies and such. If I may continue, in his brief, opposing counsel somehow blames either Judge Mage or the district court for not having sufficient evidence to weigh in his favor. However, the evidence that's presented is primarily evidence by the old expired state complaints, or state complaints that have been superseded by the ALJ, or in independent educational evaluations that were not available to the IEP team at the time of the construction of the 2016 IEP. As the evidence in the merits of this case, if I may proceed to that, the IEP discussions. Unfortunately, some of this issue at least is manufactured by the parent, and the plaintiff's counsel does not deny that. At least 40 hours of time were spent between the parent and the district in answering questions, carefully constructing the IEP over the course of five IEP meetings and ten months of time. The independent facilitator of the IEP meeting rated the opportunity for the parent to participate in this IEP process as a 10 on a scale of 10. The IEP goals, excuse me, the Alpine attendees. The Alpine attendees attended three of the five IEP meetings. The two that they didn't attend, one was an eligibility only meeting, the other they were invited to and chose not to attend for whatever reason, but the three IEP meetings that they did attend were the IEP meetings that spent majority, exclusively on time, on the development and construction of the IEP. The IEP goals and objectives were carefully constructed over the course of those hours, and they also include, as opposed to the representation given you earlier, they include principles of applied behavioral analysis embedded within the IEP, as well as within the BIP, the Behavior Intervention Plan, and the goals and objectives were designed to meet not only his behavioral needs, but also his needs in reference to academics, and access to the general education curriculum, as well as access to his expanded standards. What's your response to Nathan's argument that the ALJ applied the wrong legal standard? Your Honor, he applied the correct legal standard. Andrew F. is how he referenced all of the, around Andrew F., is how he referenced all of the procedures that are still valid under Rowley, as well as the construction of the IEP, the careful consideration of the parents' involvement, and so on. In my briefing, we, and in the amici brief, we discuss the formulation that the Supreme Court used in Andrew F. on the new standard, and that the words and verbiage of the new standard came from the construction in the section of the IEP. The IEP goals and objectives were carefully constructed to meet Nathan's needs, both behaviorally as well as instructionally, and that's the emphasis of the new standard. The new standard is that it is properly calibrated according to both the student's needs, as well as based within the context of the statute. Also, in Andrew F., Andrew F. does not change the requirement that the FAPE be provided in the least restrictive environment, as both, again, Nebo and Rowley emphasize. Andrew F. did not change that calculation. Andrew F. looked at the second prong of the Rowley standard and corrected the disputes that were happening among the circuits, and the circuits were utilizing different adjectives and different phrases that seemed to be pointing in the same direction, but there was conflict among them. To resolve that, they washed the and kept their eyes, as guided by Rowley, on terminology that is relevant to the child's needs and derived from the statute. I am complete, Your Honor. Before you sit down, just on the mootness issue. Yes. Is your answer, yes, it is moot, or no, because there are substantive issues alive? I recognize that there, let me walk through my reasoning on this, if I may. There are many similarities. Yes or no, comma. Oral advocacy. I believe that the that gets past mootness. I believe that a substantive issue, such as FAPE, in the least restrictive environment, maintains it. The procedural issues are appropriately remedied and are appropriately handled through both the IEP reviews that happen, and the simple corrections. Again, the unique aspect between this case and Fernandez is that this case deals with FAPE in the least restrictive environment, and in Fernandez it was purely a FAPE issue on a technical terminology that seemed to be procedural. Thank you, counsel, I appreciate your candor. Give Mr. Robinson 45 seconds. I'm sorry, you have more time. Were you done? Yes, I am done. Thank you, your honor. I would like to say, you know, going back to your question regarding the standard used by the administrative law judge in this case, and then the standard used by the district court as well, is to, you know, the ALJs are contracted by the Colorado Department of Education, basically, to make findings of fact and decisions of law for them. And that vast majority of the time, they're on the front lines, that the parents are unrepresented by counsel, as in this case they were. And they are invariably, not invariably, 100% of the time represented by experienced counsel, who all they do is special education work. And so it's critical that there's no confusion as to the standard of the application of the proper standard for determining the FAPE. And here, when you have an administrative law judge, who's not alone with other administrative law judges, who are still using this basic floor of opportunity consisting of some educational benefit, and making passing reference to other cases, that is, that's dangerous. It shows a clear lack of, sort of, understanding of what they are supposed to do. And this is, in this case here, is the first decision on all fours, if the court reaches the merits of this, as to the application of this NDRS standard in the 10th Circuit, which will be closely watched. And I think that the district court, district courts, clearly, and especially the ALJs, most of these cases never ever get this far, but the ALJs need a concrete decision, thought they'd have one from the Supreme Court, but from the 10th Circuit to say, you know, this is how you decide these cases. This is the standard. Thank you, counsel. I appreciate the arguments. Your time's expired. Thanks. Counsel are excused and the case will be submitted. Thank you.